KARIN J. IMMERGUT, OSB 96314
United States Attorney
GARY Y. SUSSMAN, OSB 87356
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
E-mail: gary.sussman@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. CR 08-414 MO |
| | ) | |
| BENJAMIN JACOB KERENSA, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |
| _____ | ) | |

The United States of America, by Karin J. Immergut, United States Attorney for

the District of Oregon, and Gary Y. Sussman, Assistant United States Attorney, submits

the following sentencing memorandum for the court's consideration in this case.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On August 4, 2008, defendant called the Salem Police 911 dispatcher, identified

himself as "Special Agent Richard Ellis" from the "Portland Field Office" of the FBI, and

requested assistance from the Salem Police in serving a "no bail warrant" issued by the

United States District Court for the Northern District of California for a subject defendant

named as "Ernest Hererra" (PSR ¶ 12).  According to "Agent Ellis," Hererra was at an

address on Fisher Road NE in Salem (id.).  Defendant gave the dispatcher a call back

number of 415-621-1524, and described the car he was driving (id.). That call was recorded.

The Salem Police dispatcher called the FBI office in Salem in an attempt to verify "Agent Ellis's" identity. FBI personnel informed the dispatcher that there was no agent named Richard Ellis (PSR ¶ 12). A subsequent investigation revealed that "Agent Ellis" had given the dispatcher a fictitious telephone number, and that Ernest Hererra did not exist either (PSR ¶ 13).

Also on August 4, 2008, defendant called the Willamette Valley Communications Center, which handles 911 calls for Marion and Polk Counties, to report that his estranged wife was making harassing telephone calls to him (PSR ¶ 14). During that call, which was recorded, defendant gave the dispatcher his true name and his correct cellular telephone number, and stated that he was staying on Fisher Road NE in Salem (id.).

On August 9, 2008, defendant again called the Salem Police 911 dispatcher, identified himself as an FBI agent, and requested the assistance of the Salem Police in apprehending a wanted subject. This time, he called himself "Special Agent Chris Andrews," named the wanted subject as "Daniel Nogara," and stated that Nogara had a history of drug abuse and could be armed (PSR ¶ 15). "Agent Andrews" gave the dispatcher a call back number, which turned out to be the number for defendant's cellular telephone (id.). Five Salem Police officers were dispatched to assist "Agent Andrews"

PAGE 2 -    GOVERNMENT'S SENTENCING MEMORANDUM

(id.). When responding officers could not locate "Agent Andrews," the Salem Police dispatcher called the FBI's Salem office, and learned that Agent Andrews did not exist.

Defendant made additional calls to various 911 dispatchers over the next few days. He called in a report of shots being fired on August 11, 2008 (PSR ¶ 16). The next day, he called in another "shots fired" report, this time at the Salem Hospital (PSR ¶ 17). During that call, he claimed to be a security guard at the hospital, and requested that responding officers "stage" in the main lobby of the hospital (id.). That call was made using an Internet relay service, which is designed to assist hearing- or speaking-impaired persons in placing emergency telephone calls (id.).

A few hours later, during the early morning hours of August 13, 2008, defendant was arrested by Salem Police officers after he called the Salem 911 dispatch center and told them he planned to "hurt himself" (PSR ¶ 18). In his possession at the time of his arrest were a laptop computer and a cellular telephone (id.). Defendant told arresting officers that he planned to hurt himself by walking in front of traffic on a freeway (id.).

Real FBI agents listened to the recordings of defendant's various calls to the 911 dispatch centers. They, and others familiar with defendant, identified defendant as the person who placed the calls.

This string of calls is disturbingly similar to a string of threatening telephone calls defendant placed in the San Francisco area in 2003 (PSR ¶ 32). Then, he made a series of bomb threats to various businesses, including a movie theater at which he had been

PAGE 3 -     GOVERNMENT'S SENTENCING MEMORANDUM

employed, and a convention center which was hosting a business conference from which he had been excluded (id.). His threatening calls prompted massive evacuations and resulted in massive disruptions and emergency responses (id.).

On August 15, 2008, Magistrate Judge Papak issued a criminal complaint and arrest warrant charging defendant with one count of impersonating an FBI agent, in violation of Title 18, United States Code, Section 912. Defendant was also charged with Oregon state offenses in the Marion County Circuit Court. After resolving the Marion county charges, defendant made his initial appearance in federal court on August 26, 2008. He was ordered detained pending trial.

On September 18, 2008, defendant waived indictment and was charged by information with two counts of impersonating an FBI agent. Pursuant to plea negotiations between the parties, defendant will plead guilty to one of those counts on December 8, 2008. A pre-plea presentence report was prepared, with the intention that defendant will be sentenced immediately following the entry of his guilty plea. The parties have waived the minimum disclosure and objection periods set forth in Fed. R. Crim. P. 32, and will present any objections to the presentence report directly to the court at the time of sentencing (PSR ¶ 5).

Pursuant to the plea agreement, defendant will plead guilty to count two of the information, which charges him with impersonating an FBI agent on August 9, 2008. In return, the government will move to dismiss count one (charging impersonation of an FBI

PAGE 4 -     GOVERNMENT'S SENTENCING MEMORANDUM

agent on August 4, 2008), and will neither file nor seek any new or additional federal criminal charges presently known to the U.S. Attorney's Office arising from the investigation in this case. The parties will jointly recommend a sentence of time served, which falls within the advisory guideline range as calculated by the parties. The plea agreement is governed by Fed. R. Crim. P. 11(c)(1)(B).[1]

The presentence report calculated a base offense level of 6 under U.S.S.G. § 2J1.4 (PSR ¶ 23). After recommending a two-level reduction for acceptance of responsibility, the report calculated a total offense level of 4, a criminal history category of III, and an advisory guideline range of 0-6 months (PSR ¶¶ 21, 29, 30, 36, 73). The Probation Office recommends a high-end sentence of six months' imprisonment, followed by a one-year term of supervised release (PSR Sent. Rec. at 1-2).[2]

Defendant has an extensive and well-documented history of mental health problems. Counsel has gone to great lengths to arrange for badly needed transitional housing and mental health treatment for defendant, to help ensure that defendant gets the treatment he needs, and does not fall through the cracks. The government heartily concurs in the need for such housing and treatment.

---

[1] Charges are presently pending against defendant in Curry County, Oregon, for two counts of negotiating a bad check, a misdemeanor (PSR ¶¶ 6, 41). Curry County has lodged a detainer against defendant. The Curry County District Attorney's Office has agreed to lift their detainer in exchange for defendant's agreement to make restitution to the two victims in Curry County. Defendant has agreed to do so as part of his plea agreement with the government.

[2] Because impersonating a federal officer is a Class E felony, the maximum term of supervised release available is one year. *See* 18 U.S.C. § 3583(b).

PAGE 5 -    GOVERNMENT'S SENTENCING MEMORANDUM

## II.    DISCUSSION

### A.    *The Criminal History Score in the Presentence Report is Incorrect.*

On August 21, 2008, defendant was sentenced in Marion County upon his plea of guilty to the offense of Improper Use of 911 Emergency System (PSR ¶ 33).  He received a sentence of seven days in jail, and 24 months' imprisonment (id.).  That conviction stemmed from the incident on August 9, 2008, in which defendant called the Salem Police 911 dispatcher and identified himself as FBI Special Agent Chris Andrews – the very same conduct alleged in count two of the information.  The presentence report assigned one criminal history point to the Marion County conviction (id.).

U.S.S.G. § 4A1.1(c) calls for the assignment of one criminal history point to a prior sentence of less than 60 days' imprisonment that falls within the applicable time period.  The term "prior sentence" is defined in U.S.S.G. § 4A1.2(a)(1) as "any sentence previously imposed upon adjudication of guilt . . . *for conduct not part of the instant offense*" (emphasis added).  Conduct is part of the instant offense if it is "relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)."  U.S.S.G. §4A1.3, Application Note 1.  Under § 1B1.3(a)(1), relevant conduct includes "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

Here, the conduct underlying the Marion County conviction in paragraph 33 is identical to the conduct underlying count two of the information. Because it arose from conduct that is "part of the instant offense," U.S.S.G. § 4A1.2(a)(1), it is not a "prior sentence" under the guidelines, and should not be scored as a prior conviction.

Absent the single criminal history point assigned to that conviction, defendant's criminal history subtotal should be 3, and his total criminal history points should be 5. Defendant remains in criminal history category III; his advisory guideline range remains the same.

### B.    The Appropriate Sentence in this Case.

In light of United States v. Booker, 543 U.S. 220 (2005), the sentencing guidelines are now advisory in nature. Nonetheless, they are one of the statutory factors that sentencing courts must consider when imposing a sentence. *See* 18 U.S.C. §3553(a)(4); United States v. Rita, ___ U.S. ___, 127 S.Ct. 2456, 2463 (2007). In fact, the guidelines remain the starting point in every sentencing hearing. Gall v. United States, ___ U.S. ___, 128 S.Ct. 586, 596 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range;" the guidelines "should be the starting point and the initial benchmark"). The remaining factors include the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C.

§§3553(a)(1)-(2).  They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(7).  *See also* <u>Rita</u>, 127 S.Ct. at 2463 (enumerating the statutory sentencing factors); <u>Gall</u>, 128 S.Ct. at 596 n.6 (same).

In <u>United States v. Carty</u>, 520 F.3d 984 (9th Cir.), *cert. denied*, 128 S.Ct. 2491 (2008), the Ninth Circuit, sitting en banc, summarized the procedures a sentencing court must follow.  The court must first correctly determine the applicable guideline range.  <u>Id.</u> at 991.  The court must also allow the parties to "argue for a sentence they believe is appropriate," and must "consider the §3553(a) factors to decide if they support the sentence suggested by the parties."  <u>Id.</u>  The court may not presume the guidelines are reasonable, and should not give them any more or any less weight than any other factor. <u>Id.</u>  The court "must make an individualized determination based on the facts," and must explain its choice of sentence "sufficiently to permit meaningful appellate review."  <u>Id.</u> at 991-92.

The advisory guideline range in this case is 0-6 months.  Defendant has been in custody since August 13, when he was arrested by Salem Police officers.  Thus, at the time of sentencing, defendant will have been in custody approximately four months.  In light of all of the facts and circumstances of this case, the parties believe that a sentence of time served – which falls squarely within the advisory guideline range – is sufficient,

PAGE 8 -     GOVERNMENT'S SENTENCING MEMORANDUM

but not greater than necessary to achieve the statutory sentencing factors in § 3553(a).

The government's primary concern is that defendant have a stable place to live when he is

released from custody, that he be required to undergo appropriate mental health

evaluations and treatment, that he be required to take appropriate psychotropic

medication, and that he be monitored closely by the U.S. Probation Office to ensure that

he follows through with treatment. Particularly given his criminal and mental health

histories, strict conditions of supervision are warranted.

### C.    Restitution.

Defendant's hoax telephone calls resulted in responses from various police

agencies, and the wasteful expenditure of scarce resources.  However, a dollar amount

cannot be attributed to those responses for restitution purposes.  Thus, the presentence

report does not recommend an order of restitution to any of the responding police

agencies.

As part of his plea agreement with the government, and in exchange for a promise

from the Curry County District Attorney's Office to lift their detainer, defendant has

agreed to pay restitution to the two Curry County businesses in the amounts identified in

the presentence report.  The court should impose an order of restitution pursuant to that

agreement.  The full amount should be due and payable immediately, with any unpaid

balance remaining at the time of defendant's release from custody payable in reasonable

monthly installments to be determined by the court.

PAGE 9 -    GOVERNMENT'S SENTENCING MEMORANDUM

## III.    CONCLUSION

The offense level calculations in the presentence report are correct.  The criminal history score is not, although the error will not, in the end, affect either defendant's criminal history category or his advisory guideline range of 0-6 months.  For the reasons set forth above, the parties will recommend that the court impose a sentence of time served as of the date of sentencing.  The government urges the court to impose stringent conditions of supervised release requiring defendant to maintain a stable residence subject to his probation officer's approval, that he participate in mental health treatment at the direction of his probation officer, and that he take appropriate psychotropic medications. The court should order restitution to the victim businesses, and in the amounts, identified in the presentence report.

DATED this 5th day of December 2008.

Respectfully Submitted,

KARIN J. IMMERGUT
United States Attorney

*/s/ Gary Y. Sussman*
GARY Y. SUSSMAN
Assistant United States Attorney

PAGE 10 -    GOVERNMENT'S SENTENCING MEMORANDUM

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have made service of the foregoing Government's

Sentencing Memorandum on the party named below by electronic case filing at Portland,

Oregon, on this 5th day of December 2008:


Nell Brown
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon 97204

Attorney for defendant


*/s/ Gary Y. Sussman*
GARY Y. SUSSMAN
Assistant United States Attorney